[No. 3756–8–III.   Division Three.   July 17, 1980.]

*In the Matter of the Marriage of* MARY J. LITTLE, *Respondent, and* RALPH E. LITTLE, *Appellant.*

*Allen L. Schwenker* and *Dean, Schwenker & Keane,* for appellant.

*Keith H. Campbell,* for respondent.

McINTURFF, J.—Ralph E. Little appeals a decree awarding custody of the parties' two younger children to his former wife.

Ralph and Mary Little were married in November 1961 and have four children: John, age 17; Leah, age 16; Christopher, age 6; and Michelle, age 4. In July 1978 Mrs. Little petitioned for a dissolution of marriage. A decree of dissolution was entered in March 1979. At that time the trial court did not enter a permanent custody decree even though it found that both parents were fit. This hesitancy, among other things, related to Mrs. Little's leaving the Spokane area to study liturgical music in Washington, D.C., and the fact that she planned to marry Mr. Little's cousin, who resided in the Washington, D.C., area, as soon as he

obtained a divorce from his wife.[1] Instead, the court awarded Mr. Little the "temporary custody" of the children pending a future decision to be made in 6 months. Three–fourths of a year later, the court awarded Mr. Little custody of the two older children and Mrs. Little, who now has remarried and resides in the Washington, D.C., area, custody of the two younger children.

Mr. Little contends that such an award is an abuse of discretion because it destroys the existing relationships the younger children have with their older brother and sister, their father, and their extended family, contrary to the children's welfare as well as legislative and judicial philosophy directed toward preservation of the family unit.[2]

---

[1]The court stated:

"When this matter was before me before, Mrs. Hurley was in a period of such transition that it was detrimental to the children to put those children with her. There was substantial question on the part of the Court as to whether or not her hoped–for marriage with Mr. Hurley would take place. Her status as to her true intentions, insofar as her pursuits, was in doubt, and the Court felt that it was irresponsible to award custody to her at that time."

[2]*See, e.g.,* RCW 13.34.020, which provides:

"The legislature declares that the family unit is a fundamental resource of American life which should be nurtured. Toward the continuance of this principle, the legislature declares that the family unit should remain intact in the absence of compelling evidence to the contrary." *See also In re Hansen,* 24 Wn. App. 27, 599 P.2d 1304 (1979).

In *Rickard v. Rickard,* 7 Wn. App. 907, 503 P.2d 763 (1972), the court observed at page 911:

"Courts in nearly all the states have stated that divided custody should be avoided if possible and it will not be approved except under very exceptional circumstances because it is generally considered to be not in the best interests of the children." Annot., 98 A.L.R.2d 926 (1964); 24 Am. Jur..2d *Divorce and Dissolution* § 799 (1966).

*See also Tuter v. Tuter,* 120 S.W.2d 203, 206 (Mo. App. 1938); *Accord, Fisher v. Fisher,* 207 S.W. 261, 262 (Mo. App. 1918), wherein the court stated:

for the welfare of these children they should grow up together as brother and sisters, in one household, and be permitted to share in common their childish joys and sorrows and to have the full benefit of those natural ties of affection and interest which, as the offspring of the same parents, they were intended by nature to enjoy, and which they would have enjoyed had it not been for the unfortunate circumstances which brought about the permanent separation of their father and mother.

■ A child's welfare is the paramount consideration in child custody proceedings. *In re Becker,* 87 Wn.2d 470, 477–78, 553 P.2d 1339 (1976); *Lundin v. Lundin,* 42 Wn.2d 186, 187, 254 P.2d 460 (1953); *Rickard v. Rickard,* 7 Wn. App. 907, 910, 503 P.2d 763 (1972). To achieve this end, the trial court is vested with considerable flexibility and its decision is viewed by an appellate court with deference (*In re Marriage of Nicholson,* 17 Wn. App. 110, 111, 561 P.2d 1116 (1977); *Rehak v. Rehak,* 1 Wn. App. 963, 964–65, 465 P.2d 687 (1970)), provided the trial court has substantially applied the criteria enumerated in RCW 26.09.190[3] and there is substantial evidence to support its findings. As the courts have wisely observed, when the mother and father are separated beyond the possibility of reconciliation, separation of the children is an added tragedy. *Tuter v. Tuter,* 120 S.W.2d 203 (Mo. App. 1938). For the welfare of the children, they should be allowed to grow up together in one household, sharing joys and sorrows and benefiting from those ties of affection which they were intended by nature to enjoy. *Fisher v. Fisher,* 207 S.W. 261 (Mo. App. 1918).

■ The stability the Little children had known was destroyed by their parents' divorce. This situation was exacerbated by the court's failure to rule on the question of custody at the time it entered the decree of dissolution. The initial "temporary custody order" thus continued the unstabilizing effect of the parents' separation beyond that

---

[3]RCW 26.09.190 states:

"Child custody—Relevant factors in awarding custody. The court shall determine custody in accordance with the best interests of the child. The court shall consider all relevant factors including:

"(1) The wishes of the child's parent or parents as to his custody and as to visitation privileges;

"(2) The wishes of the child as to his custodian and as to visitation privileges;

"(3) The interaction and interrelationship of the child with his parent or parents, his siblings, and any other person who may significantly affect the child's best interests;

"(4) The child's adjustment to his home, school, and community; and

"(5) The mental and physical health of all individuals involved.

"The court shall not consider conduct of a proposed guardian that does not affect the welfare of the child."

contemplated by the legislature.[4] RCW 26.09.050.[5] The statute imposes heavy responsibilities and often necessitates difficult decisions. Nevertheless, the court is under a clear and compelling duty to decide the question of custody between contending parents. The welfare of the children demands a prompt resolution with some measure of permanency.

While it may be appealing to temporize a difficult custody decision, the court must act to protect the child from contentious parents. To this end, the legislature has restricted the court's power to modify a prior custody decree. RCW 26.09.260 provides:

(1) The court shall not modify a prior custody decree unless it finds, upon the basis of facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child or his custodian and that the modification is necessary to serve the best interests of the child. In applying these standards the court shall retain the custodian established by the prior decree unless:

(a) The custodian agrees to the modification;

(b) The child has been integrated into the family of the petitioner with the consent of the custodian; or

(c) The child's present environment is detrimental to his physical, mental, or emotional health and the harm likely to be caused by a change of environment is outweighed by the advantage of a change to the child.

---

[4]The court stated:

"I don't know another case I've handled that I have considered more, in terms of that initial order. It would have been a lot simpler to have made the decision then. But Mrs. Hurley didn't really give me a chance to make that kind of decision then. We, in effect, had to try custody twice.

"I'm not sure I'll do that again. It's rather difficult."

[5]RCW 26.09.050:

"In entering a decree of dissolution of marriage, legal separation, or declaration of invalidity, the court shall consider, approve, or make provision for child custody and visitation, the support of any child of the marriage entitled to support, the maintenance of either spouse, and the disposition of property and liabilities of the parties."

█ Substance must prevail over form. Notwithstanding custody of the Little children being designated as temporary, they were integrated into their father's home and were invited to rely upon the stabilizing influences of their father and extended family.[6] The court's actions were well intentioned, but contrary to the welfare of the children. To place the children in a state of limbo and then subsequently separate them to opposite ends of the country is contrary to the legislative mandate of RCW 26.09.260, unsupported by the record, and therefore an abuse of discretion.

The modification is vacated and the matter is remanded to the Superior Court for entry of a decree in accordance with this opinion.

MUNSON, J., concurs.

GREEN, C.J. (dissenting)—The majority errs in at least four respects: (1) It has reversed this case upon an issue that was not presented to the trial court; in fact, neither party raised it in this court. It was raised for the first time by the majority in its opinion. (2) There is no statutory requirement that a *final* custody determination be made at the time the marriage relation is dissolved. (3) Even if there were such a requirement, the majority should not convert the trial court's temporary order into a final order because the trial court might have made a different determination had it known that the order was to be final; and (4) There was no abuse of discretion by the trial court in placing the custody of the two younger children with their mother because that determination is supported by substantial evidence. Consequently, I dissent.

It is axiomatic that an appellate court will not consider an issue that was not presented to the trial court. *E.g., In*

---

[6] In the Spokane area the children have on the father's side two uncles, one aunt, and both grandparents, as well as cousins. The first court–ordered home study described the import of the extended family relationships on the children as follows: "all of the relatives are very supportive of this family and give a lot of contact to them."

*re Marriage of Larango,* 93 Wn.2d 460, 464, 610 P.2d 907 (1980); *Fahn v. Cowlitz County,* 93 Wn.2d 368, 385, 610 P.2d 857 (1980); *Pearce v. G.R. Kirk Co.,* 92 Wn.2d 869, 875, 602 P.2d 357 (1979); *Bradbury v. Aetna Cas. & Sur. Co.,* 91 Wn.2d 504, 512, 589 P.2d 785 (1979); *Seattle–First Nat'l Bank v. Shoreline Concrete Co.,* 91 Wn.2d 230, 240, 588 P.2d 1308 (1979); *Eldredge v. Kamp Kachess Youth Servs., Inc.,* 90 Wn.2d 402, 408, 583 P.2d 626 (1978); *Davis v. Niagara Mach. Co.,* 90 Wn.2d 342, 345, 581 P.2d 1344 (1978); *Martin v. Municipality of Metro Seattle,* 90 Wn.2d 39, 578 P.2d 525 (1978). Here, there is nothing in the record to indicate that either party objected to the trial court's entry of the dissolution decree and the deferral of a final custody hearing. This issue was never presented to the trial judge. Consequently, it cannot be raised on appeal. The majority's error is aggravated by the fact that neither party attempted to raise the issue in this appeal. It was raised by the court sua sponte. This is error. Nevertheless, I will discuss the merits of the issue raised, the disposition of which I consider to be further error.

RCW 26.09.050 provides:

> In entering a decree of dissolution of marriage, . . . the court shall *consider* . . . or *make provision for* child custody and visitation, the support of any child of the marriage entitled to support, the maintenance of either spouse, and the disposition of property and liabilities of the parties.

(Italics ours.) Under this statute the court is only required to consider or make provision for child custody and visitation at the time the decree of dissolution is entered. Usually a final custody determination is made at that time; however, the statute does not mandate that it be done. Indeed, the best interests of the children may require that the determination of custody be deferred to a later date. This decision should rest in the sound discretion of the trial court. There may be instances where the parties have agreed upon a property division and the decree of dissolution must be entered early in the proceeding to establish

those interests of record to allow the parties to transact business unencumbered by the dissolution. At that point, the proceeding may not be ready for a custody determination. The majority decision would prohibit this type of bifurcation and could force a premature custody determination. Although that situation is not presented in this case, the court obviously believed the mother was about to remarry and the best interests of the younger children required that custody be with her. Rather than make this its final decision at the time the decree of dissolution was entered, it determined to leave the temporary custody with Mr. Little for an additional 6 months and then hold a final custody hearing. During this time, the court ordered home studies to be made and, as the court surely anticipated, the mother remarried and her home situation was stabilized. It was after these events occurred that the court finally determined the best interests of the two younger children required that custody be with the mother. The statute does not prohibit this procedure. Where the best interest and welfare of the children are paramount, as in this case, flexibility should be the hallmark of the law—not rigidity. Rigidity in this area of human relations does not promote the best interest of the children. Consequently, I find no abuse of discretion in the procedure adopted by the trial court.

Even if the majority position finally prevails, it errs in converting a temporary custody order into a final order. Had the court known it was making a final determination of custody, it may have given the children to the mother as recommended by the Lutheran Family and Child Services. Instead, the court proceeded cautiously and left the children temporarily with Mr. Little and deferred that determination for 6 months. At that time, following other home studies and the remarriage of Mrs. Little, the final determination was made to place custody of the two younger children with the mother. While I disagree with the majority position that a final determination must be made at the time the decree of dissolution is entered, if that position

becomes law, then the relief that should be granted is a remand to the trial court to reconsider its temporary order and enter a permanent order effective on the date the decree of dissolution was entered.

Finally, in my view, the only issue presented is the question of whether there is substantial evidence to support the court's award of custody of the two younger children to the mother. I find more than ample evidence to support the trial court's determination. Three home studies support the award of custody. Only one study recommended that the children be kept together with the father. Additionally, a highly qualified psychologist, who conducted several psychological tests with the two younger children and later their mother, and who had the opportunity of visiting the mother in her new home situation, concluded that the placement of the younger children with the mother would put them in a positive environment. She testified that because of the age differential between the two older children and the two younger children their relationship was not so much a sibling relationship as one of a parent relationship. Consequently, in her opinion the separation of the children was not of great moment in the context of the overall situation.[7]

The home study reports indicate that the marriage between these parties was at times stormy. Mr. Little apparently had a drinking problem and at times he became abusive to his wife and to his children. He claims to be over this problem although the wife contends otherwise. This was an item given consideration in the home study reports recommending that the younger children be placed with their mother.

The trial judge saw and heard the parties and their witnesses and considered the evidence. He is in a better posi-

---

[7]The age differential in the cases cited by the majority was slight as compared to this case and is therefore not apposite. *Tuter v. Tuter,* 120 S.W.2d 203 (Mo. App. 1938) (children age 3 and younger); *Fisher v. Fisher,* 207 S.W. 261 (Mo. App. 1918) (children ages 12, 10, 9 and 4).

tion than this court to determine what is in the best interests of the children. In the absence of a clear abuse of discretion, we should be slow to overturn a trial judge's decision in a custody case even if we might have made a different decision. The wisdom of his decision is not at issue in this court. As the court observed in *In re Marriage of Croley,* 91 Wn.2d 288, 292, 588 P.2d 738 (1978):

> Respondent argues that . . . the trial court's award of custody was not supported by substantial evidence. Respondent's contention is not well taken. Whether we would have reached the same conclusion is not the question before us. Similarly, the wisdom of the trial court's decision is not at issue. The sole question is whether there is substantial evidence to support the court's award of custody.

For the reasons stated, I would affirm the determination of the trial court. Therefore, I dissent.

Reconsideration denied September 3, 1980.

Review granted by Supreme Court November 7, 1980.